# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 20 2018, 11:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lee M. Stoy, Jr.
Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

Rodolfo Malpica,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

April 20, 2018

Court of Appeals Case No.
48A02-1705-CR-1094

Appeal from the Madison Circuit Court

The Honorable Thomas Newman, Jr., Judge

Trial Court Cause No.
48C03-1505-F1-692

**Baker, Judge.**

[1] Rodolfo Malpica appeals his conviction for Level 1 Felony Child Molesting,[1] arguing that the evidence is insufficient. Finding the evidence sufficient, we affirm.

## Facts

[2] J.E. lives with her mother in Owensville and has regular visits with her father. When she visits with her father, she also frequently visits with her paternal grandmother, Linda Eldon. Malpica is Eldon's live-in boyfriend; J.E. calls him "Paco."

[3] In December 2014, J.E. was four and five years old (she has a December birthday). One day in December 2014, J.E. was with her mother after visiting with her father over the weekend. J.E.'s mother became concerned after J.E. made some comments about Malpica and then "shut down" and "quit talking" to her mother about it. Tr. Vol. II p. 15. J.E.'s mother decided to take J.E. to the police station based on this conversation.

[4] The next day,[2] J.E. was forensically interviewed at a child advocacy center. During the interview, the interviewer asked J.E. about different kinds of touches:

> Interviewer: So [J.E.,] who gives you hugs?

---

[1] Ind. Code § 35-42-4-3(a)(1).

[2] The precise date is not revealed by the record on appeal.

J.E.: Mommy.

Interviewer: Is that ok with you or not ok?

J.E.: It is ok.

Interviewer: And what about kisses, who gives you kisses?

J.E.: Mommy.

Interviewer: And is that ok or not ok?

J.E.: Yea.

Interviewer: That's ok?

J.E.: Yea.

Interviewer: Alright. Is there anything, touches that are not ok with you?

J.E.: Um, Paco touched my pee-pee.

Interviewer: Paco touches your pee-pee?

J.E.: Yea.

Interviewer: Ok. And what does he do when he touches your pee-pee?

J.E.: He touched two spots.

Interviewer: He touched two spots?

J.E.: Yea.

Tr. Vol. I p. 239-40. The interviewer then showed J.E. a picture of the human body and asked her to indicate where "Paco" had touched her.

Interviewer: Can you show me on here which part Paco touched?

J.E.: Like, this part and this part.

Interviewer: This part, and what do you call that?

J.E.: The body where you go poopy.

Interviewer: The body where you go poopy. Do you know the name for that part?

J.E.: Uh-uh.

Interviewer: No? Ok, and what other part did he touch?

J.E.: My, this part.

Interviewer: This part?

J.E.: Yep, that's the pee-pee where you go potty.

Interviewer: That's the pee-pee where you go potty?

J.E.: Yea.

Interviewer: What did he touch that part with?

J.E.: With his finger.

***

Interviewer: Ok. Did his finger touch the inside of your pee-pee or the outside of your pee-pee?

J.E.: Inside.

Interviewer: Inside, ok what did that feel like?

J.E.: Like it was hurting.

*Id.* at 241, 244.  J.E. told the interviewer that she "didn't wipe very good at daddy's house" and as a result, she had a red sore that Malpica touched.  *Id.* at 244.  Eldon later explained that sometimes J.E. inadequately wiped herself after a bowel movement, causing the child to have sore and red areas on her buttocks.

During the interview, J.E. was unable to give specific details but consistently stated that Malpica had touched her private parts two times.  She referred to Malpica as a "kid" and described him as being five years old, *id.* at 243, 249-50, but admitted that she did not know what a grownup was and described him as being "big" like Eldon.  *Id.* at 249-50.  J.E. stated that Malpica touched her while her clothes were on, then said he touched her while her clothes were off, then said her clothes were "[o]n and off."  *Id.* at 243.  J.E. also referred to Malpica as a "kitty," leading to the following colloquy:

> Interviewer:  Is Paco a kid or a kitty?
>
> J.E.:            Like a kitty.
>
> Interviewer:  Ok, so is he a person or a cat?
>
> J.E.:            A person.
>
> Interviewer:  He's a person, ok.
>
> J.E.:            And a cat.

*Id.* at 247-48.  At one point, J.E. said that Malpica told her to keep "silly secrets and funny secrets," *id.* at 222, though she does not speak Spanish and he does

not speak English. In the end, however, J.E. reaffirmed that "Paco was hurting my parts" and that he made her feel "worried." *Id.* at 248; Tr. Vol. II p. 4.

[6] On May 8, 2015, the State charged Malpica with Level 1 felony child molesting. A jury trial took place on March 21 and 22, 2017. During the trial, J.E., who was then seven years old, testified but was unable to recall most of what she told the interviewer during the forensic interview. She was, however, able to remember—and testify—that Malpica had touched her on her private body parts, including where she goes "pee pee" and "poo poo," that he did so with his finger, that it hurt, and that it made her feel "[s]ad." Tr. Vol. I p. 184-85. The State then offered J.E.'s forensic interview into evidence; the trial court admitted it over Malpica's objection.[3]

[7] Later at trial, Barbara Vernon, who is Vice President of Child and Parent Services, testified about the difference between the memory of a young child—a person she referred to as a "single digit" person—and that of a "double digit" person. Tr. Vol. II p. 47-48. Vernon explained that whereas a ten- to fifteen-year-old might be able to give a lot of detailed information during a forensic interview, a single digit person would only be able to tell the "who" and "what," and possibly the "where," of an incident of molestation. *Id.* at 48-49. In other words, when a very young single digit child discloses abuse, the expectation is not to get a detailed account of the abuse. Moreover, it is harder

---

[3] Malpica does not argue on appeal that this evidence was improperly admitted.

for single digit children to remember and recite memories years after they occurred because after a few years, half of their life has passed and they have compiled and stored a lot of new information in a short amount of time. *Id.* at 50-51.

[8] At the conclusion of the trial, the jury found Malpica guilty as charged. Following an April 17, 2017, sentencing hearing, the trial court sentenced Malpica to thirty years imprisonment. Malpica now appeals.

## Discussion and Decision

[9] Malpica's sole argument on appeal is that the evidence is insufficient to support the conviction. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the conviction and will neither assess witness credibility nor reweigh the evidence. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We will affirm unless no reasonable factfinder could find the elements of the crime proved beyond a reasonable doubt. *Id.*

[10] To convict Malpica of Level 1 felony child molesting, the State was required to prove beyond a reasonable doubt that he performed or submitted to sexual conduct with J.E., who was under fourteen years of age, and that Malpica was at least twenty-one years of age. I.C. § 35-42-4-3(a)(1). Malpica does not argue that specific elements are unsupported by sufficient evidence; instead, he argues that the rule of incredible dubiosity renders the evidence insufficient as a whole.

[11] Appellate courts may impinge upon a jury's function to judge the credibility of a witness by applying the "incredible dubiosity" rule. *Smith v. State*, 34 N.E.3d 1211, 1221 (Ind. 2015). Application of this rule is limited to specific circumstances because we are extremely hesitant to invade the province of the jury. *Id.* To warrant application of the incredible dubiosity rule, there must be: "'1) a sole testifying witness; 2) testimony that is inherently contradictory, equivocal, or the result of coercion; and 3) a complete absence of circumstantial evidence.'" *Id.* (quoting *Moore v. State*, 27 N.E.3d 749, 756 (Ind. 2015)).

[12] Here, J.E. was the sole testifying witness regarding the crime, and there was no circumstantial evidence supporting the conviction. Therefore, we must determine whether her testimony was inherently contradictory, equivocal, or the result of coercion. Initially, we note that there is no evidence—and Malpica does not argue—that her testimony was the result of coercion.

[13] Malpica points to the following portions of J.E.'s forensic interview in support of his contention that her testimony was incredibly dubious: (1) J.E. stated at one point that Malpica was a child and at another that he was a cat; (2) J.E. was inconsistent regarding whether her clothes were on or off at the time Malpica touched her; and (3) J.E. stated that Malpica told her secrets, although she did not understand Spanish and he could not speak English.

[14] We certainly acknowledge the inconsistencies and the somewhat strange— though quite appropriate for a very young child—statements made by J.E. during her forensic interview. Initially, we note that a significant amount of

leeway is accorded to child witnesses regarding "equivocations, uncertainties, and inconsistencies," and this type of evidence must be considered in conjunction with the circumstances, including the passage of time between an incident and trial. *Fajardo v. State*, 859 N.E.2d 1201, 1209 (Ind. 2007) (noting that such inconsistencies do not necessarily render the testimony incredibly dubious).

[15] Moreover, J.E. has remained remarkably consistent, from the time of the interview through the time of the trial, about the salient fact that Malpica had touched her private parts on two occasions. This clear, unequivocal testimony establishes the necessary elements of the charged offense. *See id.* at 109 (holding that despite the inconsistencies from an eleven-year-old witness, the child's clear and unequivocal testimony established the necessary elements and the incredible dubiosity rule did not apply). Inasmuch as J.E.'s testimony was clear and unequivocal with respect to the necessary elements of the offense, we find that the incredible dubiosity rule does not apply.

[16] The remaining inconsistencies and eccentric statements made by J.E. were for the jury to weigh and assess, and we will not invade its province in that regard. *See, e.g.*, *Beckham v. State*, 531 N.E.2d 475, 476 (Ind. 1988) (question of whether child victim's testimony, which was inconsistent at times, was to be believed was for the jury to determine). Similarly, Malpica's argument that J.E.'s statements could merely have referred to an innocent touching amounts to a request that we reweigh the evidence—a request we decline. *See, e.g.*, *Jones v. State*, 22 N.E.3d 877, 879 (Ind. Ct. App. 2014) (holding that we will not reverse

a conviction "merely because a different inference might plausibly be drawn from the evidence"). The evidence is sufficient to support the conviction.

[17] The judgment of the trial court is affirmed.

Kirsch, J., and Bradford, J., concur.